Jerry E. KELLY, Plaintiff–Respondent,

v.

UNITED PARCEL SERVICE, INC.,
Defendant–Appellant.

No. SD.32151.

Missouri Court of Appeals,
Southern District,
Division One.

May 30, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied June
21, 2013.

Application for Transfer Denied
Oct. 1, 2013.

Talmage E. Newton, IV, St. Louis, for appellant.

Mark E. Rundel, Galena, for Respondent. (No brief filed.)

NANCY STEFFEN RAHMEYER, J.

In December 2008, Jerry E. Kelly contracted with United Parcel Service, Inc. ("UPS"), to ship two Rolex watches and a diamond bracelet[1] from Missouri to Louisiana, C.O.D., by next day air service. He paid $178.95 for the option of "C.O.D. $10,796.32, Guaranteed." On delivery of the watches and bracelet, UPS collected a cashier's check payable to "Gary E. Kelly," and delivered that check to Kelly. Kelly sued UPS in circuit court for breach of contract. Following a trial to the court, the trial court entered judgment in favor of Kelly in the amount of $10,796.32.

The parties stipulated orally that:

Jerry Kelly, went to the local UPS Store [in Branson West, Missouri,] back in December of '08 and—and entered into an agreement with them for the shipping of two Rolex watches and a diamond tennis bracelet with a—I think a declared value of everything finally was around $10,500, to be shipped to a Michael Morgan in Louisiana [by next day air service]. This was to be a COD shipment and he was to receive either cash or certified funds. The package was ultimately delivered to the person believed to be Michael Morgan. And Michael Morgan gave to the UPS driver a cashier's—what purports to be a cashier's check in the total sum of 10,796.32. However, the check is made payable to Gary E. Kelly, not Jerry Kelly.

Kelly testified at trial that he endorsed his name on the back of the cashier's check and attempted to deposit the cashier's check at his local bank, but the bank "wouldn't deposit it" and told him "you'll have to get Gary to endorse it." Subse-quently, Kelly "called the bank and found out the check was no good."

The trial court found: UPS agreed to deliver a package for Kelly and to collect from the recipient of the package on delivery, an adult signature and guaranteed funds in the amount of $10,795.32 payable to Kelly. UPS delivered the package, and obtained an adult signature and what appears to be a facially valid cashier's check in the correct amount; however, the check was made payable to "Gary E. Kelly" instead of "Jerry E. Kelly," the plaintiff. Kelly's bank would not let him deposit the cashier's check because he is not "Gary E. Kelly," the person to whom the check is made payable. As a result, Kelly has what appears to be a facially valid certified cashier's check with which he can do nothing because UPS "admittedly" accepted that payment made out to the wrong person. UPS claims that the cashier's check is fraudulent, i.e., it is a forgery or otherwise fraudulent. Kelly does not dispute the cashier's check may be fraudulent as claimed by UPS but no evidence was adduced conclusively establishing whether the check is or is not fraudulent.

### Standard of Review

Our standard of review was set forth in *Consolidated Grain & Barge, Co. v. Hobbs*, 397 S.W.3d 467, 474 (Mo.App. S.D.2013):

In a court-tried case, we must affirm the judgment of the trial court unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Johnson v. Estate of McFarlin*, 334 S.W.3d 469, 473 (Mo.App. S.D.2010).

---

1. At trial, Mr. Kelly testified that he sold and shipped "a couple of Rolex watches and a bracelet." The UPS shipping form, Exhibit B, incorrectly states that two Rolex watches and a *necklace* were shipped.

A judgment is supported by substantial evidence when there is evidence from which the trier of fact can reasonably find all facts necessary to sustain the judgment. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). In determining whether there is substantial evidence, we view the evidence and reasonable inferences from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's credibility determinations. *Id.*

### Analysis

UPS appeals claiming that the trial court erred:

I.   The trial court erred in ruling in favor of the Respondent for breach of contract, because the trial court failed to properly apply contractual provisions that limit the liability of United Parcel Service, Inc. when collecting or delivering checks, in that the UPS Tariff/Terms and Conditions of Service for Small Package Shipments, limits the liability of United Parcel Service, Inc. when collecting or delivering checks.

II.   The trial court erred in ruling in favor of the Respondent for breach of contract, because the trial court erroneously determined that the check collected by United Parcel Service, Inc., made payable to Gary E. Kelly, and delivered to Jerry E. Kelly was not negotiable, in that (1) UPS did not have a duty to deliver a check made payable to Jerry E. Kelly; and (2) the check was a negotiable instrument.

III.   The trial court erred in ruling in favor of the Respondent for breach of contract, because Jerry E. Kelly ratified United Parcel Service, Inc.'s conduct, in that he presented the check to his bank and attempted to deposit and otherwise negotiate the check thereby ratifying UPS's conduct.

### Point I

■   We initially point out that UPS's first point does not comply with Rule 84.04(d)(1)[2] in that it does not advise us in what way the UPS Tariff/Terms and Conditions of Service for Small Package Shipments limits the liability of UPS. In its argument, UPS contends that the UPS Tariff is incorporated into the shipping contract. The trial court accepted UPS's contention that "[Kelly] is bound by the terms and remedies of the UPS Tariff even if [Kelly] was without knowledge or notice of the tariff."[3]   Despite the tariff, however, the trial court found that Kelly's suit in Missouri for a breach of contract was not pre-empted by federal law and UPS breached its agreement by accepting a check that was made out to the wrong person.

UPS relies upon Section IV.Q.6 of the tariff to argue that it is not liable to Kelly. Specifically, UPS claims the italicized portion relieves it of all liability for the tendered cashier's check:

6.   Consignee's Checks in Payment of C.O.D.s: Unless instructions to collect a cashier's check or money order only are shown on the C.O.D. tag (in conformity with the instructions on the tag) or system-generated label, UPS will accept a check or other negotiable instrument issued by or on behalf of the consignee. When instructions to collect a cashier's check or money order only are clearly indicated on the C.O.D. tag or system-generated label, UPS reserves the right

---

**2.**   All rule references are to Missouri Court Rules (2013), unless otherwise specified.

**3.**   We do not address that issue.

to accept a cashier's check, money order, official bank check or other similar instrument issued by or on behalf of the consignee. All checks or other negotiable instruments (including cashier's checks, official bank checks, money orders and other similar instruments) tendered in payment of C.O.D.s will be accepted by UPS *based solely upon the shipper assuming all risk relating thereto including, but not limited to, risk of non-payment, insufficient funds, and forgery, and UPS shall not be liable upon any such instrument.* All checks or other negotiable instruments (including cashier's checks, official bank checks, money orders and other similar instruments) will be transmitted to the shipper together with UPS's own check if consignee check(s) collected are for less than the C.O.D. amount. Remittances (checks, money orders, etc.) received that are less than the C.O.D. dollar amount indicated by the shipper will be reimbursed for the full amount unless the variance of the amount remitted is less than $1.00.

(Emphasis added.)

UPS focuses on the language that the "shipper assume[s] all risk relating thereto including, but not limited to, risk of non-payment, insufficient funds, and forgery, and UPS shall not be liable upon any such instrument." UPS ignores the stipulation that "[Kelly] was to receive either cash or certified funds." Kelly agreed that had UPS produced the facially valid cashier's check made payable to him he would not have a claim. The trial court found that UPS did not produce a facially valid negotiable instrument made payable to Kelly and thus breached its contract with Jerry E. Kelly to collect such an instrument "in conformity with the instructions on the tag" and with the contract in general.

This is not a case where a facially valid negotiable instrument was obtained in conformity with the instructions for a C.O.D. delivery and the instrument was proven to be a check with insufficient funds or a forgery. UPS's claim that it fulfilled its obligation by collecting "a check that appeared to be valid" is factually inaccurate. UPS collected a check made out to the wrong person. We find no error in the trial court's findings or conclusions of law that the tariff required UPS to produce a cashier's check or provide cash to Jerry E. Kelly. Point I is denied.

### Point II

■ In its second claim of error, UPS claims that the trial court erred in finding that the check made payable to "Gary E Kelly" was not negotiable because (1) UPS did not have a duty to deliver a check made payable to "Jerry E. Kelly" and (2) the check was a negotiable instrument. We need only address the first prong of the complaint. UPS's total argument that the UPS Tariff did not obligate UPS to deliver a check made payable to Jerry E. Kelly consists of one paragraph:

UPS Tariff, Sec. IV.Q. sets forth the obligations of UPS as to COD services. (See L.F.: 059–061). The Tariff does not obligate UPS to collect and deliver a negotiable instrument that is expressly made out to the person seeking COD services. Accordingly, assuming the instrument was non-negotiable, Appellant UPS did not breach the agreement/contract with Respondent by accepting it.

There is no further discussion of the entire Tariff which contains pages of commitments concerning the delivery of packages. Specifically not mentioned by UPS is Section Q.4., which states in part: "Upon delivery of each C.O.D. package, UPS will attempt to collect the amount shown on the C.O.D. tag or the system-

generated label attached to the package and transmit to the shipper the amount so collected[.]" The paragraph continues to describe how many attempts will be made and the procedure after that.

We are at a loss to ascertain under what theory UPS does not have an obligation to honor the agreement it makes with a customer when it receives a fee for the service of delivering a package and collecting on delivery. Lombardo, the representative for UPS, testified that UPS's "job [was] to get a check for Jerry Kelly," and the UPS driver's instructions would have been to "secure funds payable to Jerry Kelly." Lombardo further testified that if the only problem with a check is that "there's an error ... as far as who it's payable to," UPS in the past has normally deposited the check in UPS's account and issued the customer a replacement check.

When reviewing the entire agreement, it was clear that UPS was to obtain cash or an acceptable alternative for the delivery. It makes no sense that UPS could obtain a cashier's check payable to some other person and expect that it had fulfilled its C.O.D. contract. It is a reasonable interpretation of the contract that the sender be the payee on the cashier's check or receives cash or an acceptable alternative. Point II is denied.[4]

### Point III

■ UPS claims that the trial court erred in ruling in favor of Kelly because Kelly "ratified" UPS's conduct in presenting the check to his bank and attempting to deposit and otherwise negotiate the check. UPS supports its claim by citing to

cases from other jurisdictions which state that a shipper that "unconditionally accepted and deposited the checks" was held to have ratified UPS's conduct. None of the cases cited deal with a situation where the shipper was not able to deposit the check because the check was not made out to the shipper. The trial court noted the claimed defense: "The problem with [UPS's] argument is the check was not depositable by [Kelly]." Point III is denied.

The judgment is affirmed.

GARY W. LYNCH, P.J. and WILLIAM W. FRANCIS, JR., J., Concur.

---

4. As to the second prong of UPS's argument, that the check was a negotiable instrument, even if this check was a negotiable instrument for Gary E. Kelly, *Jerry* E. Kelly could not negotiate the instrument. UPS argues that hypothetically Jerry E. Kelly could *negotiate*

the check under section 400.3–110(a), RSMO 2000, as the person "intended" to be paid. The problem with the argument is there was no evidence of what the signer of the instrument intended.